# THE STRAND/BRC GROUP, LLC, ET AL. *v.*
# BOARD OF REPRESENTATIVES OF
# THE CITY OF STAMFORD
# (SC 20578)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.*

*Syllabus*

Pursuant to the Stamford Charter (§ C6-30-7), "[i]f [20] percent or more of
the owners of the privately-owned land in the area included in any
proposed amendment to the Master Plan, or the owners of [20] percent
or more of the privately-owned land located within [500] feet of the
borders of such area, file a signed petition with the Planning Board . . .
objecting to the proposed amendment, then said decision shall have no
force or effect but the matter shall be referred by the Planning Board
to the Board of Representatives . . . . The Board of Representatives
shall approve or reject such proposed amendment at or before its second
regularly-scheduled meeting following such referral."

The plaintiffs, owners of certain real property in the city of Stamford,
appealed to the trial court from the decision of the defendant board of
representatives, which had rejected the decision of the city's planning
board to approve the plaintiffs' application to amend the city's master
plan. In their application filed with the planning board, the plaintiffs
sought an amendment to the master plan in order to modify the land
use categories of their properties, which previously had been the site
of a recycling center, to allow for high density residential development.
The planning board then submitted its own application, seeking to mod-
ify the land use categories of adjacent properties to allow for similar

---

* This case originally was scheduled to be argued before a panel of this
court consisting of Chief Justice Robinson and Justices McDonald, D'Auria,
Mullins, Kahn, Ecker and Keller. Although Justice Ecker was not present
when the case was argued before the court, he has read the briefs and
appendices, and has listened to a recording of oral argument prior to partici-
pating in this decision.

Strand/BRC Group, LLC *v.* Board of Representatives

development. The planning board conducted separate hearings on the two applications and approved the amendments proposed therein by separate motions, reclassifying the relevant properties to allow for high density, multifamily residential development. Thereafter, an individual affiliated with a local neighborhood organization filed a single protest petition, signed by owners of property adjacent to the plaintiffs' properties, with the planning board pursuant to § C6-30-7, challenging the two amendments to the master plan approved by the planning board. The planning board referred the protest petition to the board of representatives pursuant to § C6-30-7, and a legislative officer for the board of representatives determined that the petition was valid as to the amendment pertaining to the adjacent properties because it met the signature requirement set forth in § C6-30-7 but that it was invalid as to the amendment pertaining to the plaintiffs' properties because it did not meet the signature requirements for the subject area. Nonetheless, the board of representatives subsequently voted to verify the validity of the protest petition. The board of representatives then voted on the merits of the protest petition and rejected the planning board's approval of the amendments to the master plan pertaining both to the plaintiffs' properties and the adjacent properties. On appeal from the decision of the board of representatives, the trial court concluded that the board of representatives did not have the authority to determine the validity of the protest petition because, once the petition was filed with the planning board, the charter charged the board of representatives only with determining the substantive issue of whether the proposed amendments should be approved or rejected. The court rendered judgment sustaining the plaintiffs' administrative appeal, from which the board of representatives appealed. *Held*:

1. The trial court correctly concluded that the board of representatives lacked authority to assess the validity of a protest petition that had been referred to it by the planning board: although the charter allows opponents of an amendment to the master plan to challenge the proposed amendment by filing a valid protest petition with the planning board, once the protest petition is referred to the board of representatives, the language of § C6-30-7 of the charter authorizes the board of representatives only to "approve or reject [the] proposed amendment" and not the protest petition itself, which is merely the procedural vehicle to put the amendment before the board of representatives for review; moreover, the charter provisions require the planning board to verify the procedural validity of a protest petition before referring that petition to the board of representatives; accordingly, the board of representatives acted outside of the powers granted to it by the charter and overstepped its authority by purporting to verify the validity of the protest petition referred to it by the planning board, and its vote on the validity of the protest petition was improper.

Strand/BRC Group, LLC *v.* Board of Representatives

2. The board of representatives could not prevail on its claim that, even if it did not have authority to decide the validity of the protest petition, it nonetheless properly exercised its authority under the charter to decide the merits of the plaintiffs' application by rejecting the planning board's amendment to the city's master plan under the plaintiffs' application, and, accordingly, the trial court properly sustained the plaintiffs' appeal: under § C6-30-7 of the charter, a protest petition is valid and subject to referral by the planning board only if it is timely filed and signed by either 20 percent or more of the owners of the privately owned land in the area that is the subject of the proposed amendment to the master plan or signed by the owners of 20 percent or more of the privately owned land located within 500 feet of the borders of such area, and, because a valid protest petition is a condition precedent to the authority of the board of representatives to vote on the merits of an amendment, that board's vote on the merits of an amendment contained in an invalid petition is void; moreover, the signature requirements in § C6-30-7 are not a mere formality but serve an important substantive purpose, namely, limiting the authority conferred on the board of representatives by ensuring that review of an amendment to the master plan by that board is triggered only if there is a sufficient number of owners of private property within a defined geographical area with interests directly affected by the proposed amendment, and, because those requirements were intended to be mandatory rather than directory, the board of representatives did not have discretion to act on the proposed amendment notwithstanding the legal invalidity of the protest petition; furthermore, this court previously had held that the signatures in a single protest petition challenging two distinct amendments cannot be aggregated to meet the threshold signature requirements set forth in § C6-30-7, and, in the present case, it was undisputed that, insofar as the protest petition challenged the amendment approved in the plaintiffs' application, the petition did not contain the threshold number of signatures required to permit the planning board to refer the petition to the board of representatives.

(*One justice dissenting*)

Argued September 10, 2021—officially released March 15, 2022

*Procedural History*

Appeal from the decision of the defendant rejecting a decision by the Planning Board of the City of Stamford to amend the city's master plan to permit certain residential development, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of Hartford, Land Use Litigation Docket, where the case was tried to the court,

*Hon. Marshall K. Berger, Jr.*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment sustaining the appeal, from which the defendant, on the granting of certification, appealed. *Affirmed.*

*Patricia C. Sullivan*, for the appellant (defendant).

*David T. Martin*, for the appellees (plaintiffs).

*Opinion*

ECKER, J. The dispositive issue in this appeal is whether the defendant, the Board of Representatives of the City of Stamford (board of representatives), had the authority to approve a protest petition that objected to master plan amendments approved by the Planning Board of the City of Stamford (planning board). The plaintiffs, The Strand/BRC Group, LLC, 5-9 Woodland, LLC, Woodland Pacific, LLC, and Walter Wheeler Drive SPE, LLC, filed an application with the planning board to amend the master plan of the city of Stamford (city). Shortly afterward, the planning board filed its own application to amend the city's master plan. After the planning board approved both applications with some modifications, local property owners filed a protest petition under § C6-30-7 of the Stamford Charter (charter). The board of representatives determined that the protest petition was valid and rejected the planning board's approval of the amendments. The plaintiffs appealed from the decision of the board of representatives to the trial court, which sustained the plaintiffs' appeal. We affirm the judgment of the trial court.

The underlying facts are undisputed. The plaintiffs own parcels of real property in the city located at 707 Pacific Street; 5, 9, 17, 21, 23, 25, 29, 39 and 41 Woodland Avenue; and 796 Atlantic Street. In October, 2018, the plaintiffs proposed an amendment to the city's master plan to modify their properties' land use categories (Application MP-432) to allow high density residential

342 Conn. 365        MARCH, 2022        369

Strand/BRC Group, LLC *v.* Board of Representatives

development on the site, which previously had been used as a recycling collection and disposal center. Specifically, the plaintiffs sought to modify their properties' land use categories from category 4 (residential—medium density multifamily), category 6 (commercial—neighborhood), and category 9 (urban mixed-use), to category 5 (residential—high density multifamily) and category 9, which would allow for more dense development. The planning board thereafter submitted its own application to modify the land use categories of adjacent properties from categories 4 and 6 to category 9 (Application MP-433).[1] The proposals contained in the respective applications, though plainly related, were two different amendments contained in two different applications from two different applicants. Application MP-432 was filed separately from Application MP-433 and advertised to the public independently. The planning board conducted public hearings on both applications, after which it approved them by separate motions insofar as they each sought a change to land use category 5.[2] The planning board published separate legal notices of the approval of each amendment.

Shortly thereafter, Susan Halpern, vice president of the South End Neighborhood Revitalization Zone Initiative, filed a single protest petition signed by adjacent property owners, challenging the planning board's approval of Applications MP-432 and MP-433 pursuant to § C6-30-7 of the charter, which provides in relevant part that, "[i]f twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan, or the owners

---

[1] The adjacent properties are located at 701 and 705 Pacific Street; 13 and 43 Woodland Avenue; 0, 784 and 804 Atlantic Street; and 12, 18 and 20 Walter Wheeler Drive.

[2] The planning board concluded that category 9 was "too intense for this area . . . ." Accordingly, "instead of . . . categor[ies] 5 and 9 for the parcels requested, the [planning] board adopted . . . category 5 for all of the parcels and rejected the request . . . [for] category 9."

Strand/BRC Group, LLC *v.* Board of Representatives

of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area, file a signed petition with the Planning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment, then said decision shall have no force or effect but the matter shall be referred by the Planning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral. . . .'' Pursuant to § C6-30-21 of the charter, the decision must be made by an ''affirmative vote of a majority of the entire membership of said Board . . . .'' See generally *Benenson* v. *Board of Representatives*, 223 Conn. 777, 781, 612 A.2d 50 (1992) (describing protest petition process).

Pursuant to § C6-30-7, the planning board referred the protest petition to the forty member board of representatives on the same day it was received. The legislative officer, Valerie T. Rosenson, for the board of representatives reviewed the validity of the protest petition and determined that it was valid as to Application MP-433 because it had been signed by 33 percent of the property owners in the subject area relevant to Application MP-433 but invalid as to Application MP-432 because it had not been signed by 20 percent of the property owners in the 500 foot border of the area or 20 percent of the property owners in the subject area relevant to Application MP-432.[3]

Approximately ten days later, the city's special counsel, James Minor, submitted a memorandum, recom-

[3] According to Rosenson, only 6.77 percent of the property owners in the 500 foot border area, and none of the property owners in the subject area of Application MP-432, signed the petition.

Strand/BRC Group, LLC *v.* Board of Representatives

mending that the board of representatives separately address each of the two applications referenced in the protest petition because the applications "involved separate applicants, application numbers, property boundaries, amendments, legal notices and decisions." Additionally, Attorney Minor pointed out that, pursuant to *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 572 A.2d 951 (1990), and *Hanover Hall* v. *Planning Board*, 2 Conn. App. 49, 475 A.2d 1114, cert. granted, 194 Conn. 805, 482 A.2d 710 (1984) (appeal dismissed March 5, 1985), the board of representatives must determine if it has authority to consider the protest petition by ascertaining whether it contains a sufficient number of signatures on the basis of "the area where the specific amendment is located," as opposed to the area that may be affected by the change.

The issue concerning the validity of the protest petition was referred to the board of representative's land use-urban redevelopment committee (committee), which voted unanimously to reject the protest petition with respect to Application MP-432 and to accept the protest petition with respect to Application MP-433. Following a public hearing, at which various property owners expressed their disapproval of both amendments, the board of representatives voted to send Application MP-432 back to the committee for reconsideration. The committee reconsidered its decision to reject Application MP-432 and ultimately approved the protest petition as it applied to Application MP-432. On the same day, the board of representatives convened a special meeting to determine the validity of the protest petition, at which it voted to verify its validity by a vote of seventeen to twelve. The board of representatives later voted on the merits of the protest petition and rejected the planning board's approval of Application MP-432 by a

Strand/BRC Group, LLC *v.* Board of Representatives

vote of twenty-one to eleven and Application MP-433 by a vote of twenty-three to twelve.

The plaintiffs appealed to the trial court from the rejection of Application MP-432 by the board of representatives.[4] The plaintiffs challenged the authority of the board of representatives to review the planning board's decision on numerous grounds, and the parties agreed to address that issue as a threshold matter before reaching the merits. Pursuant to *Benenson* v. *Board of Representatives*, supra, 223 Conn. 777, the trial court determined that "the board [of representatives] had no authority to determine the validity of the petition and [that] its action was improper" because, "[o]nce the petition was filed with the planning board, the only charge for the board [of representatives] was to determine the substantive issue, i.e., the proposed amendments." The court then determined that, even if the board of representatives had the authority to vote on the validity of the protest petition, "[t]he vote was not sufficient [because] it failed to garner a majority of the entire forty person board or twenty-one votes."[5] See Stamford Charter § C6-30-21 (requiring majority vote of entire board of representatives "in deciding all matters"). Accordingly, the trial court sustained the plaintiffs' appeal. This appeal followed.[6]

_____

[4] Neither the plaintiffs nor the planning board appealed from the decision of the board of representatives rejecting Application MP-433. Therefore, that board's decision on Application MP-433 was not before the trial court and is not at issue in the present appeal.

[5] Accordingly, the trial court determined that it was "unnecessary . . . to reach the issue of whether the protest petition, as applied to the plaintiffs' application, was invalid because it did not have the required signatures." Nonetheless, the trial court observed that "the record clearly indicates that . . . the board [of representatives] ignored the advice of its able counsel . . . and improperly counted the signatures [on] the protest petition and applied them to the plaintiffs' and the planning board's applications in combination instead of to each application separately." (Citations omitted.)

[6] The board of representatives appealed from the judgment of the trial court to the Appellate Court, which granted that board's petition for certification to appeal pursuant to General Statute § 8-8 (o). We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Strand/BRC Group, LLC *v.* Board of Representatives

On appeal, the board of representatives claims that, regardless of whether it lacked authority to decide the validity of the protest petition, it nonetheless had authority to rule on the merits of Application MP-432, which was duly rejected by a majority of that board, i.e., twenty-one members. The plaintiffs respond that the board of representatives lacked authority to rule on the merits of Application MP-432 because the charter does not authorize that board to vote on the validity of a protest petition, and, in the absence of a valid petition, the board of representatives lacked the authority to reach the merits of the application. Relatedly, the plaintiffs argue that the protest petition was invalid because it lacked the requisite number of signatures to trigger referral by the planning board under the charter and, accordingly, that there was "no procedural vehicle to put the amendment before the board [of representatives] for review." Alternatively, if the board of representatives had the authority to vote on the validity of the protest petition, the plaintiffs contend that its approval of the protest petition by a vote of seventeen to twelve was invalid because the petition required an affirmative vote of twenty-one board members.

The board of representatives, in considering the proposed amendment, was "called [on] to perform a legislative function." (Internal quotation marks omitted.) *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783; accord *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 421–22; *Burke* v. *Board of Representatives*, 148 Conn. 33, 39, 166 A.2d 849 (1961). Because the board of representatives was acting in a legislative capacity, the decision of the board "must not be disturbed by the courts unless the party aggrieved by that decision establishes that the [board] acted arbitrarily or illegally." (Internal quotation marks omitted.) *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning*

Strand/BRC Group, LLC *v.* Board of Representatives

*Commission*, 220 Conn. 527, 543, 600 A.2d 757 (1991); see *Campion* v. *Board of Aldermen*, 278 Conn. 500, 527, 899 A.2d 542 (2006) ("[c]ourts will not interfere with . . . local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion" (internal quotation marks omitted)). If the board of representatives exceeded the scope of its permissible authority to act under the charter, then its decision was contrary to law and an abuse of discretion. See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 422 n.7.[7]

"[A city] charter . . . constitutes the organic law of the municipality." (Citation omitted.) *West Hartford Taxpayers Assn.*, *Inc.* v. *Streeter*, 190 Conn. 736, 742, 462 A.2d 379 (1983). "[A] city's charter is the fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . Agents of a city, including [the board of representatives], have no source of authority beyond the charter." (Citations omitted; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 423. "[T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express lan-

_____

[7] The dissent contends that we do "not engage with or follow [the] reasoning" of the case law governing judicial review of legislative action, citing *LaTorre* v. *Hartford*, 167 Conn. 1, 355 A.2d 101 (1974), and *Mills* v. *Town Plan & Zoning Commission*, 145 Conn. 237, 140 A.2d 871 (1958), overruled in part on other grounds by *Mott's Realty Corp.* v. *Town Plan & Zoning Commission*, 152 Conn. 535, 209 A.2d 179 (1965). Neither *LaTorre* nor *Mills* required this court to examine the scope of a municipal body's authority to act under an applicable charter provision. The pertinent cases, cited in the body of this opinion, establish that (1) the proper inquiry in the present context is whether the board of representatives acted arbitrarily or illegally, and (2) under that standard, an action of the board of representatives is "illegal" if undertaken in violation of the requirements of the municipal charter.

342 Conn. 365 MARCH, 2022 375

Strand/BRC Group, LLC *v.* Board of Representatives

guage.'' (Internal quotation marks omitted.) *Perretta* v. *New Britain*, 185 Conn. 88, 92–93, 440 A.2d 823 (1981); see *Thomson* v. *New Haven*, 100 Conn. 604, 606, 124 A. 247 (1924) (''[m]unicipal corporations created by charter derive all their powers from the charter under which they act'').

The proper construction of the charter presents a question of law, over which our review is plenary. E.g., *Kiewlen* v. *Meriden*, 317 Conn. 139, 149, 115 A.3d 1095 (2015). ''In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws.'' (Internal quotation marks omitted.) *Fennell* v. *Hartford*, 238 Conn. 809, 826, 681 A.2d 934 (1996); see General Statutes § 1-2z.

I

We first address whether, pursuant to the charter, the board of representatives has the authority to assess the validity of a protest petition that has been referred by the planning board. ''[I]n interpreting [charter] language . . . we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the [charter provisions].'' (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014). In *Benenson* v. *Board of Representatives*, supra, 223 Conn. 777, this court addressed the board of representatives' authority to review a protest petition under a former provision, § C-552.2,[8] of the charter. Section C-552.2 provided in

[8] ''Section C-552.2 of the . . . charter provide[d]: 'After the effective date of the master plan, if the owners of twenty per cent or more of the privately-owned land in the area included in any proposed amendment to the zoning map, or if the owners of twenty per cent or more of the privately-owned

Strand/BRC Group, LLC *v.* Board of Representatives

relevant part that, if a valid petition is filed "with the zoning board . . . objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the zoning board to the board of representatives . . . together with written findings, recommendations and reasons. The board of representatives shall approve or reject such proposed amendment at or before its second regularly scheduled meeting following such referral." (Internal quotation marks omitted.) Id., 780 n.3. On the basis of the plain language of § C-552.2, we concluded that "[t]he question before the board [of representatives] was not the petition, which indicated the property owners' objection to the zone change, but whether the zone change should be approved. The petition was merely the vehicle that brought the issue before [said] board. This is made clear in § C-552.2, which provides that after the petition is referred to the board [of representatives, it] shall approve or reject such proposed amendment . . . . *The charter does not provide for the approval or rejection of the petition itself.*" (Emphasis altered; internal quotation marks omitted.) Id., 783; see *Burke* v. *Board of Representatives*, supra, 148 Conn. 39 ("The manifest legislative intent expressed in the . . . charter is that the board of representatives, in considering an amendment to the zoning map, shall review the legislative

land located within five hundred feet of the borders of such area, file a signed petition with the zoning board, within ten days after the official publication of the decision thereon, objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the zoning board to the board of representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The board of representatives shall approve or reject such proposed amendment at or before its second regularly scheduled meeting following such referral. When acting upon such matters the board of representatives shall be guided by the same standards as are prescribed for the zoning board in section 550 of this act. The failure of the board of representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the zoning board's decision.' " *Benenson* v. *Board of Representatives*, supra, 223 Conn. 780 n.3.

action of the zoning board on [its] written findings, recommendations and reasons. The question before the board of representatives is whether to approve or to reject the amendment.'').

The relevant charter provision at issue in this appeal is essentially the same as the charter provision that we interpreted in *Benenson.* Both § C-552.2 and § C6-30-7 allow opponents of an amendment to the zoning plan or the master plan of the city, respectively, to challenge the proposed amendment by filing a valid protest petition with the zoning board or the planning board, as the case may be. Once the protest petition has been referred to the board of representatives, the language of § C6-30-7, like the language of § C-552.2, authorizes only that the board of representatives approve or reject the *amendment, not ''the 'petition' itself.''* (Emphasis added.) *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783; see Stamford Charter § C6-30-7 (''[The protest petition] shall be referred by the Planning Board to the Board of Representatives within twenty days after . . . official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral.''). Thus, the board of representatives lacks the authority to assess the validity of a protest petition after it has been duly referred by the planning board.

As the trial court pointed out, ''this leaves the question of who had authority to determine the validity of the petition . . . .'' Our review of the charter leads us to conclude that its provisions require the planning board to verify the procedural validity of a protest petition *before* it refers the petition to the board of representatives. Section C6-30-7 provides that the planning board ''shall'' refer a protest petition to the board of representatives only if two requirements are met: (1) the

Strand/BRC Group, LLC *v.* Board of Representatives

petition is signed by the requisite number of property owners in the subject area, and (2) the petition is filed with the planning board within ten days after the official publication of the planning board's decision.[9] Once a protest petition has been referred, the authority of the board of representatives is limited to either "approv-[ing] or reject[ing]" the proposed amendment. Stamford Charter § C6-30-7. Thus, the board of representatives overstepped its authority by purporting to verify the validity of the protest petition.

It is well established that municipal authorities are "confined to the circumference of those [powers] granted and may not travel beyond the scope of [the] charter or in excess of the granted authority." (Internal quotation marks omitted.) *Highgate Condominium Assn.* v. *Watertown Fire District*, 210 Conn. 6, 16–17, 553 A.2d 1126 (1989). "[When] the town charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful . . . ." *Miller* v. *Eighth Utilities District*, 179 Conn. 589, 594, 427 A.2d 425 (1980); see *Burke* v. *Board of Representatives*, supra, 148 Conn. 42 ("[when] the charter of a municipality provides that action of the legislative body shall be by ordinance or resolution, it must act in the manner prescribed"); *Food, Beverage & Express Drivers Local Union No. 145* v. *Shelton*, 147 Conn. 401, 405, 161 A.2d 587 (1960) (charter is city's enabling act, and, "[when] the charter points out a particular way in which any act is to be done, the prescribed form must be pursued for the act to be lawful"). Because the board of representatives was acting outside of the powers granted by

---

[9] Because the planning board referred the protest petition to the board of representatives, we need not address the rules and procedures that would govern any appeal from the planning board's refusal to refer a protest petition to the board of representatives.

Strand/BRC Group, LLC *v.* Board of Representatives

the charter, we conclude that its vote on the validity of the protest petition was improper.[10]

II

The board of representatives contends that, regardless of whether it had the authority to decide the validity of the protest petition, it plainly had the authority to decide the merits of Application MP-432, which is exactly what it did when a majority voted to reject the planning board's amendment to the city's master plan under Application MP-432. It argues that its vote on the validity of the protest petition was at worst "a nullity" that must be "ignored" and, therefore, that the trial court improperly failed to address the substantive issue of whether the board of representatives properly rejected Application MP-432 on the merits. The claim, in essence, is "no harm, no foul"—the board of representatives had authority under the charter to approve the protest petition, and it did so by majority vote.

This argument might well be persuasive *if* the protest petition at issue, as it relates to Application MP-432, had been a legally valid petition pursuant to the charter. But, for reasons we discuss next, the petition protesting the amendment approved under Application MP-432 was invalid as a matter of law, and the board of representatives' approval of that invalid petition cannot be sustained as a result.

Section C6-30-7 of the charter authorizes the planning board to refer a protest petition to the board of representatives only if it is timely filed and signed by (1) "twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan," or (2) "the own-

---

[10] In light of our conclusion, we need not address whether the board of representatives' approval of the validity of the petition by a vote of seventeen to twelve was an "affirmative vote of a majority of the entire membership of [that] [b]oard" under § C6-30-21 of the charter.

Strand/BRC Group, LLC *v.* Board of Representatives

ers of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area . . . .'' The planning board has twenty days to refer the protest petition to the board of representatives, which then must either ''approve or reject such proposed amendment . . . .'' Stamford Charter § C6-30-7; see *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783. The failure of the board of representatives to timely approve or reject the proposed amendment is ''deemed as approval of the Planning Board's decision.'' Stamford Charter § C6-30-7.

The signature requirement set forth in the charter serves an obvious and important purpose. The board of representatives cannot exercise its authority to accept or reject a proposed amendment to the master plan at will. See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 424 (noting that petition requirements of analogous charter provision governing protest petition for zoning map amendments determines ''authority of the board of representatives'' to accept or reject proposed change). Instead, § C6-30-7 confers a limited authority on the board of representatives, which may be exercised *only* if a sufficient percentage of the owners of private property within a defined geographical area—an area in or proximate to the affected area—sign and timely file a protest petition with the planning board.[11] See id., 413. The language of

[11] The dissent criticizes our reliance on *Stamford Ridgeway Associates*, contending that ''[i]t was not this court that said that [sufficient signatures in a protest petition are required to trigger review by the board of representatives]. Rather, that came from an opinion by Attorney Robert A. Fuller . . . .'' Footnote 6 of the dissenting opinion. The dissent ignores that we expressly *relied* on Fuller's analysis to reach our conclusion that the ''charter permits the board of representatives to vote on separate zone changes contained in one zoning application'' if there are sufficient signatures with respect to each separate zone. *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 409. We quoted Fuller at length and stated that ''we agree with the parties that Fuller's analysis . . . presents the most reasonable and rational interpretation'' of the charter and ''strikes a balance between the common good and public interest in zoning, and the legitimate

Strand/BRC Group, LLC *v.* Board of Representatives

the charter seeks "to provide *affected* landowners a right to appeal a proposed [amendment]" by requesting reconsideration by the board of representatives after a threshold requirement has been met. (Emphasis added.) Id., 432; see *Steiner, Inc.* v. *Town Plan & Zoning Commission*, 149 Conn. 74, 76, 175 A.2d 559 (1961) (protest petitions are designed "to afford protection to [nearby] property owners against changes to which they object"); *Warren* v. *Borawski*, 130 Conn. 676, 681, 37 A.2d 364 (1944) (observing that "[t]he purpose of [a New Britain ordinance permitting the town council to vote on a proposed zoning amendment] *if a protest is filed by owners of 20* [*percent*] *of the property affected* is to give some protection *to those owners* against changes to which they object" (emphasis added)). The signature requirement is not a mere formality but a substantive provision of the charter intended to ensure that review by the board of representatives is triggered if, and only if, there is a sufficient number of owners of private land with interests directly affected by the proposed amendment. See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 426 (construing analogous charter provision governing protest petitions for zoning amendments to prevent improper procedures from frustrating purpose of provision to serve interests of owners of private land most affected by amendments).[12]

---

private interest of property owners adversely affected by a proposed change." (Internal quotation marks omitted.) Id., 436–37. In light of this explicit adoption of Fuller's analysis, we reject the dissent's suggestion that we have misinterpreted *Stamford Ridgeway Associates.*

[12] The dissent observes, and we agree, that an amendment to the master plan may affect "the interests of innumerable Stamford residents on issues of economics, environment, and population density, to name but a few." Footnote 5 of the dissenting opinion. But this court does not get to determine which Stamford residents are sufficiently affected by a proposed amendment to be eligible to sign the protest petition that would authorize the board of representatives to accept or reject the amendment. The *charter* makes that determination, and the relevant charter provision very clearly does not provide all Stamford residents with a right to protest the decision of the planning board to the board of representatives. Under the plain language

Strand/BRC Group, LLC *v.* Board of Representatives

To give § C6-30-7 its intended and obvious meaning, it is clear that a protest petition is valid and subject to referral by the planning board only if it contains the required number of signatures. See id., 413 (explaining that sufficient signatures are needed for board of representatives to reconsider amendment);[13] *Burke* v. *Board*

of § C6-30-7, that right is limited to a specific percentage of owners of privately owned land within a defined geographic proximity of the "the area included in any proposed amendment" or "within five hundred (500) feet of the borders of such area . . . ."

[13] The dissent contends that "*Stamford Ridgeway Associates* makes clear that the signature provision is not an aggrievement, condition precedent, or limitation provision. Rather, it protects affected nearby landowners by empowering them to obtain greater review by the [b]oard of [r]epresentatives, not less," and that "[i]t cannot, therefore, be said that the signature provision is a matter of substance or that the full legislative scheme evinces an intent to impose a mandatory requirement." (Footnotes omitted.) The basis for this contention eludes us. *Stamford Ridgeway Associates* involved valid protest petitions signed by the requisite number of "owners of property . . . who were adversely affected by the proposed rezoning." *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 410. The problem was that multiple zone changes had been combined into a single zoning application, and, even though the protest petitions were valid as to each individual zone change, they were invalid as to the application as a whole. The issue on appeal was whether the signature requirement pertained to each individual zone change or to the whole application. See id., 409. To resolve that issue, we analyzed the purpose of the signature requirement and the function that it was intended to serve. We concluded that the signature provision serves an important substantive purpose and that construing it in such a manner as to apply to the application as a whole "would, as a practical matter . . . completely [frustrate]" that purpose. Id., 426. We relied on the opinion rendered by the board's independent counsel, Attorney Robert A. Fuller, to conclude that, "[i]f a large percentage of the area included in the application was not proposed for a zone change (for example, the entire city of Stamford) . . . it would be impossible to obtain enough signatures to meet the [20] percent requirement within the ten day limitation [period] set by the charter to petition the board. Moreover, the property owners who were not affected by any of the zone changes or amendments or those who are comfortable with their zone change will be very reluctant [to sign] a petition." (Internal quotation marks omitted.) Id.; see footnote 11 of this opinion.

Inherent in our holding in *Stamford Ridgeway Associates* was our conclusion that a protest petition must contain "enough signatures to meet the [20] percent requirement" and that, if there were an insufficient number of signatures, the signatories would have no "right to appeal to the [b]oard" of

Strand/BRC Group, LLC *v.* Board of Representatives

*of Representatives*, supra, 148 Conn. 35 (explaining that referral is made "[i]n th[e] event" that protest petition meets signature requirements); see also *Blaker* v. *Planning & Zoning Commission*, 219 Conn. 139, 148, 592 A.2d 155 (1991) ("[a] protest petition is not presumptively valid").[14] In the absence of the required number of signatures, a protest petition cannot properly be referred to the board of representatives, and, therefore, that board cannot properly reach the merits of the amendment challenged by the protest petition. See *Woldan* v. *Stamford*, 22 Conn. Supp. 164, 167, 164 A.2d 306 (1960) (concluding that "the petition did not contain the signatures of owners of 20 [percent] of the land within 500 feet," as required by charter, and, therefore, "the matter was not properly before the board of repre-

[r]epresentatives. (Internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 426. The dissent is correct, of course, that the signature provision protects affected, nearby owners of land by "empowering them to obtain greater review by the board of representatives," but this is true only if the requisite number of those owners sign the petition. Any other reading of the charter renders those requirements meaningless.

[14] Contrary to the dissent's assertion, our holding in *Burke* does not support its thesis. In *Burke*, we addressed whether "the board of representatives act[ed] arbitrarily and illegally in failing to give notice and to provide a hearing before taking action to reject [a zoning] amendment . . . ." *Burke* v. *Board of Representatives*, supra, 148 Conn. 37. We answered that question in the negative because there were "no specific provisions for notice and hearing by the board of representatives, and we cannot write such provisions into the charter by judicial fiat." Id., 40. In contrast, in the present case, there *is* a specific provision in the charter, providing for referral to the board *if* "twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan, or the owners of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area, file a signed petition with the Planning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment . . . ." Stamford Charter § C6-30-7. We cannot erase this explicit provision from the charter by judicial fiat any more than we can write some other provision into the charter. See *Burke* v. *Board of Representatives*, supra, 40; see also *Kiewlen* v. *Meriden*, supra, 317 Conn. 151 n.11 ("we are not at liberty to ignore the plain language of" municipal charter).

sentatives''). Because a valid protest petition is a condition precedent to the authority of the board of representatives to vote on the merits of an amendment, that board's vote on the merits of an amendment contained in an invalid petition is void.

The dissent contends that the board of representatives, as a legislative body comprised of elected officials, has discretion to act on the proposed amendment notwithstanding the legal invalidity of the protest petition. This is so, the dissent argues, because the petition requirements set forth in the charter are merely "directory" and nonsubstantive. We disagree. The board of representatives is entitled to discretion when acting in its legislative capacity, but it is not at liberty to act in contravention of charter provisions expressly limiting that authority to specified conditions. Nor are that board's legislative actions insulated from judicial review when it has exceeded its authority under the express provisions of the charter. See *Parks* v. *Planning & Zoning Commission*, 178 Conn. 657, 661, 425 A.2d 100 (1979) ("[t]he broad discretion of local [municipal] authorities acting in their legislative capacity is not . . . unlimited"); see also Stamford Charter § C2-10-1 ("The legislative power of the City shall be vested in the Board of Representatives. No enumeration of powers contained in this Charter shall be deemed to limit the legislative power of the Board *except as specifically provided in this Charter*." (Emphasis added.)).

The distinction that our case law makes between "directory" and "mandatory" provisions in statutes or charters cannot avoid or render benign the charter violation that occurred when the board of representatives acted on a proposed amendment that was not properly before it due to the legal defect in the protest petition. We have held that "[t]he test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the

Strand/BRC Group, LLC *v.* Board of Representatives

thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially [when] the requirement is stated in affirmative terms unaccompanied by negative words.'' (Internal quotation marks omitted.) *Lauer* v. *Zoning Commission*, 246 Conn. 251, 262, 716 A.2d 840 (1998).[15] ''Stated another way, language is deemed to be mandatory if the mode of action is of the essence of the purpose to be accomplished by the statute . . . but will be considered directory if the failure to comply with the requirement does not compromise the purpose of the statute.'' (Citation omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 690, 674 A.2d 1300 (1996).

The express signature requirements in § C6-30-7 are elaborate in detail and crafted to achieve a manifestly substantive purpose. The charter specifies the precise numerical and geographical requirements that must be satisfied by the signatories before the protest petition

_____

[15] Our prior case law has looked at a number of factors to determine whether the provision can be deemed mandatory or directory. ''These include: (1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether *the requirement at issue relates to a matter of substance or one of convenience*; (4) whether the legislative history, the circumstances surrounding the statute's enactment and amendment, and *the full legislative scheme evince an intent to impose a mandatory requirement*; (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance.'' (Emphasis added.) *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 758–59, 104 A.3d 713 (2014).

can trigger referral of the proposed amendment to the board of representatives. These charter requirements are not imposed for "convenience and dispatch" or "to ensure the orderly review of amendments by the board of representatives," as the dissent suggests. Instead, as we previously discussed, the purpose of the signature requirement is to limit the authority of the board of representatives to reject an amendment to the master plan, once approved by the planning board, *to situations in which a protest petition is signed by a significant percentage of the persons most affected by the amendment* (i.e., 20 percent of the owners of privately owned land in the area included in the proposed amendment or located within 500 feet of the borders of such area).[16]

---

[16] In this respect, the petition requirements in § C6-30-7 stand in stark contrast to those provisions deemed directory by courts, which often involve time limitations set forth in specific statutory provisions designed to ensure order and convenience. See, e.g., *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 463, 692 A.2d 742 (1997) (requirement that assessor provide notice of assessment within thirty days of hearing is directory); *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995) (requirement that Commissioner of Revenue Services act on tax refund claim within ninety days is directory); *State* v. *Tedesco*, 175 Conn. 279, 284, 397 A.2d 1352 (1978) (requirement imposing time limitation on agency's regulations "are designed to secure order, system and dispatch, and are directory, not mandatory"); *Broadriver, Inc.* v. *Stamford*, 158 Conn. 522, 530, 265 A.2d 75 (1969) (statutory requirement that return of notice be filed within ninety days is directory), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970); *Donohue* v. *Zoning Board of Appeals*, 155 Conn. 550, 554, 235 A.2d 643 (1967) (requirement that zoning board of appeals decide appeal within sixty days after hearing is directory). See generally *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 761, 104 A.3d 713 (2014) (observing that, "in a number of cases, both this court and the Appellate Court have concluded that such statutory deadlines are directory [when] there is no express legislative guidance to the contrary and no indication that the legislature intended the deadline to be jurisdictional"). But see *Vartuli* v. *Sotire*, 192 Conn. 353, 359, 472 A.2d 336 (1984) (requirement to issue decision within sixty-five day limit is mandatory), overruled by *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 623 A.2d 1007; *Viking Construction Co.* v. *Town Planning Commission*, 181 Conn. 243, 246, 435 A.2d 29 (1980) (requirement that planning and zoning commission act on subdivision application within time limits is mandatory).

Strand/BRC Group, LLC *v.* Board of Representatives

The dissent is correct that the detailed requirements in § C6-30-7 governing protest petitions are not accompanied by an explicit statement containing negative or prohibitory language, but negative or prohibitory language of this sort is not dispositive of our analysis, particularly when, as here, the substantive nature of the requirement is clear. See *Blake* v. *Meyer*, 145 Conn. 612, 616, 145 A.2d 584 (1958) ("[i]t is clear that the provision under consideration is mandatory, not merely directory, even in the absence of prohibitory or negative language"). The absence of negative or prohibitory language, in short, does nothing to alter our conclusion that the signature requirements in § C6-30-7 of the charter serve an important substantive purpose and were intended to be mandatory rather than directory.

This brings us to the merits of the plaintiffs' core challenge to the validity of the protest petition, namely,

---

The dissent incorrectly relies on these cases to support the notion that the relevant charter provision is directory. These cases, however, all involve time limitations, which often (although not always) are deemed directory in nature because the deadlines imposed do not implicate "the essence of the thing to be accomplished" but, rather, are "designed to secure order, system and dispatch in the proceedings . . . ." (Internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 169 Conn. App. 527, 537, 151 A.3d 404 (2016), aff'd, 328 Conn. 586, 181 A.3d 550 (2018); see, e.g., id. ("[W]e are persuaded that the thirty day time provision set forth in Practice Book § 11-21 is intended to secure order and dispatch in the timely disposition of a pending issue. Therefore, the time limitation contained in the rule is directory and not mandatory."); see also 3 S. Singer, Sutherland Statutes and Statutory Construction (8th Ed. 2020) § 57:17, pp. 101–102 ("The question about whether time provisions are mandatory or directory . . . is a bit unique, as interpretation may be informed less by a search for legislative intent alone, and more by policy and equitable considerations aimed at avoiding harsh, unfair, or absurd consequences. . . . [F]or reasons founded in justice and fairness, and to avert injury to faultless parties, courts often find that such provisions are directory merely." (Footnotes omitted.)).

The signature requirements set forth in the charter, which define by geographical proximity those owners eligible to sign the protest petition and establish the minimum percentage of signatories needed to qualify for review, are not comparable to time limitations, which are intended to ensure order, efficiency and dispatch. Indeed, the dissent has not articulated any purpose for the signature requirements that could be considered nonsubstantive in nature.

Strand/BRC Group, LLC *v.* Board of Representatives

that the petition challenging the amendment approved in Application MP-432 is legally invalid because it lacks the requisite number of signatures.[17] The issue, properly framed, is easily resolved under our case law because it is undisputed that, insofar as the protest petition challenged Application MP-432, in particular, it did not contain the threshold number of signatures required to permit referral to the board of representatives.[18] As the trial court noted, the record indicates that the protest petition was valid and subject to referral only if the two different amendments contained in the respective applications, Applications MP-432 and MP-433, are considered collectively instead of separately. See footnote 5 of this opinion.

Our precedent has spoken on the board of representatives' authority to simultaneously vote on multiple zoning amendments, whether contained in one or multiple applications, as challenged in a protest petition. In S*tamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 409, we addressed whether, pursuant to a former provision of the charter, § C-552.2, the board of representatives has authority "to vote on separate zone changes [involving multiple amend-

[17] During oral argument before this court, counsel for the board of representatives argued for the first time that the validity of the petition is not properly before us because the planning board is not a party to the present action and "the decision of the planning board [to refer a protest petition] would need to be appealed as any other land use appeal." It is well established that we may decline to address "newly raised argument[s]" and that "a claim cannot be raised for the first time at oral argument." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 797 n.12, 256 A.3d 655 (2021). To the extent that the board of representatives claims, for the first time on appeal, that the plaintiffs had an obligation to appeal from the decision of the planning board referring the protest petition to the board of representatives or that the planning board is an indispensable party to the present action, we deem these claims abandoned.

[18] We disagree with the dissent that we have appointed ourselves "as a municipal signature counter . . . ." The number of signatures is undisputed on appeal, and we resolve no questions of fact in our adjudication of the legal issue presented.

Strand/BRC Group, LLC *v.* Board of Representatives

ments] contained in one zoning application or whether the board of representatives must act on the entire application,'' even though the single application contained several distinct amendments. Section C-552.2, which included essentially the same relevant text as § C6-30-7, and was the same provision at issue in *Benenson*; see footnote 8 of this opinion; provided that, ''if twenty percent or more of the owners of the privately-owned land in the area included in *any proposed amendment*'' or ''owners of twenty percent or more of the privately-owned land located within five hundred feet of the borders of such area'' timely file a signed petition objecting to the proposed amendment, the petition shall be referred to the board of representatives. (Emphasis added; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 409 n.1; cf. Stamford Charter § C6-30-7 (requiring, among other things, signatures from ''twenty (20) percent or more of the owners of the privately-owned land in the area included *in any proposed amendment*'' (emphasis added)). Because the word ''amendment'' has been ''interpreted . . . as effecting a change in existing law,'' we reasoned in *Stamford Ridgeway Associates* ''that the [20] percent requirement in § C-552.2 is to be measured by the areas that were changed or rezoned'' in connection with each individual amendment, rather than all the areas contained in the entire application. (Internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 425–26. We concluded that the board of representatives properly voted on ''each separate zone change [amendment] within one application for which a valid protest petition has been filed.'' Id., 436.

*Stamford Ridgeway Associates* makes it clear that the relevant charter language *requires* the board of representatives considering a protest petition to treat each amendment individually instead of aggregating multiple amendments and voting on them collectively.

Strand/BRC Group, LLC *v.* Board of Representatives

"If we were to construe 'amendment' in § C-552.2 to mean . . . [all amendments in] the entire application . . . it would lead to bizarre and irrational results and frustrate the purpose of the charter provision" by enabling "a municipal agency to [e]nsure passage of a highly objectionable zoning amendment by simply combining it with another large, unobjectionable amendment. A statute must not be construed in a manner that would permit its purpose to be defeated." (Internal quotation marks omitted.) Id., 426. Furthermore, "the use of the singular form of the word 'amendment' shows an intent to refer to only one amendment or one single zone change." Id., 430. In light of the plain language and purpose of the charter, we held that the board of representatives properly "vote[d] on each separate zone change encompassed in [one single] application . . . ." Id., 433.

Pursuant to *Stamford Ridgeway Associates*, the signatures on a protest petition challenging two distinct amendments, contained, respectively, in Applications MP-432 and MP-433, cannot be aggregated to meet the threshold 20 percent requirements under § C6-30-7 of the charter. Because it is undisputed that Application MP-432, standing alone, lacked sufficient signatures to warrant referral to the board of representatives under the charter, we conclude that the protest petition was invalid as to Application MP-432. Accordingly, the board of representatives lacked the authority to vote on the merits of Application MP-432, and the trial court properly sustained the plaintiffs' appeal from that board's decision.

The judgment is affirmed.

In this opinion ROBINSON, C. J., and McDONALD, MULLINS, KAHN and KELLER, Js., concurred.

D'AURIA, J., dissenting. In a state with 169 municipalities, each legislatively created and with its own form

Strand/BRC Group, LLC *v.* Board of Representatives

of governance, it should not be surprising that this court often counsels against judicial interference in local legislative decisions. See, e.g., *Benenson* v. *Board of Representatives*, 223 Conn. 777, 784, 612 A.2d 50 (1992) ("[c]ourts will interfere with legislative decisions made by municipalities only where the party seeking review can characterize the legislative act as illegal, fraudulent, or corrupt" (internal quotation marks omitted)). This case illustrates well the importance of heeding our own advice, which the court today does not. I respectfully dissent.

The Planning Board of the City of Stamford is made up of five mayoral appointees, nominated by the mayor and approved by the Stamford Board of Representatives. Stamford Charter §§ C6-00-2 and C6-00-3. In the present case, the Planning Board approved amendments to Stamford's master plan of development, "the general land use Plan for the physical development of the City." Stamford Charter § C6-30-3. The plaintiffs, The Strand/BRC Group, LLC, 5-9 Woodland, LLC, Woodland Pacific, LLC, and Walter Wheeler Drive SPE, LLC, owners of land in the city, proposed an amendment "to modify their properties' land use categories to allow high-density residential development on the site of a former recycling collection and disposal center." The Planning Board also submitted a proposed amendment pertaining to nearby properties. The Planning Board then conducted public hearings on both amendments and approved them. Pursuant to § C6-30-7 of the Stamford Charter (charter), a Stamford resident filed a protest petition with the Planning Board, signed by adjacent property owners, objecting to the proposed amendments. The Planning Board referred the petition to the defendant, the Board of Representatives of the City of Stamford. See Stamford Charter § C6-30-7.

The Board of Representatives is made up of forty members elected by the city's residents, two from each

of the city's twenty voting districts. Stamford Charter §§ C1-80-1 and C1-80-4. The charter provides that "[t]he legislative power of the City [is] vested in the Board of Representatives. No enumeration of powers contained in this Charter shall be deemed to limit the legislative power of the Board except as specifically provided in this Charter." Stamford Charter § C2-10-1. In the present case, upon the Planning Board's referral of the petition, the Board of Representatives voted to reject the amendments. To get their amendment reinstated, pursuant to § C6-30-20, the plaintiffs appealed to the trial court. The plaintiffs claimed, among other things, that the Planning Board never should have referred the petition to the Board of Representatives without first determining whether the petition was timely filed and contained enough signatures for referral. The plaintiffs contend that there were an insufficient number of signatures because the Board of Representatives improperly combined petition signatures for the two separate applications. The trial court sustained the appeal, nullifying the Board of Representatives' rejection of the plaintiff developers' proposed amendment to the master plan.

In affirming the judgment of the trial court, the majority today strikes down the action of Stamford's most representative and authoritative legislative body: the rejection of an amendment to the master plan proposed by the plaintiff developers. The majority instead affirms amendments approved by five Planning Board members, passed to facilitate the development of a high density residential development. The majority is able to upend the political process in this way only by labeling as substantive that which is procedural and imposing judicial standards on that which is legislative.

It is undisputed that, when approving or rejecting proposed amendments to the city's master plan, both the Planning Board and the Board of Representatives exercise legislative authority. This court has recognized

Strand/BRC Group, LLC *v.* Board of Representatives

that, "in the planning and zoning context, [a] zoning amendment is a change in the ordinance, enacted by the legislative authority of a municipality." (Emphasis omitted; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 425, 572 A.2d 951 (1990). Similarly, in a case also involving Stamford's charter, we indicated that, "[the] [B]oard [of Representatives], in reviewing the action of the [city's] zoning board, is called upon to perform a legislative function." *Burke* v. *Board of Representatives*, 148 Conn. 33, 39, 166 A.2d 849 (1961). No one contends that the Planning Board's action is other than legislative. "The plain language of [the charter provision] leaves no room for any other construction." *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783. In exercising their respective authority related to amending the master plan for the city, both the Planning Board and the Board of Representatives are directed to apply the same legislative standards. See Stamford Charter §§ C6-30-3 and C6-30-7;[1] see also *Stamford*

---

[1] Section C6-30-3 of the charter guides the Planning Board when it acts on the master plan. Section C6-30-3 provides: "The Master Plan shall be the general land use Plan for the physical development of the City. The Plan shall show the division of Stamford into land use categories such as, but not restricted to, the following:

"1. Residential—single family plots one acre or more.

"2. Residential—single family plots less than one acre.

"3. Residential—multi-family—low density.

"4. Residential—multi-family—medium density.

"5. Commercial—local or neighborhood business.

"6. Commercial—general business.

"7. Industrial.

"The land use categories indicated on the Master Plan shall be defined by the Planning Board and made a part of such Plan. The Plan shall also show the Board's recommendation for the following: streets, sewers, bridges, parkways, and other public ways; airports, parks, playgrounds and other public grounds; the general location, relocation and improvement of schools and other public buildings; the general location and extent of public utilities and terminals, whether publicly or privately-owned, for water, light, power, transit, and other purposes; the extent and location of public housing and neighborhood development projects. Such other recommendations may be made by the said Board and included in the Plan as will, in its judgment,

*Ridgeway Associates* v. *Board of Representatives*, supra, 432 (referring to standards guiding Board of Representatives as "typical legislative standards; viz., promotion of health and the general welfare, provision for adequate light and air, prevention of overcrowding, and avoidance of undue population concentration" (internal quotation marks omitted)).

I fully agree with the majority's well reasoned analysis and conclusion that, consistent with the charter's language, it is the Planning Board's responsibility to determine whether a protest petition meets the provisions for a referral to the Board of Representatives, namely, whether the petition is signed by the prescribed number of property owners in the subject area and filed with the Planning Board within ten days after the official publication of the Planning Board's decision. See Stamford Charter § C6-30-7. More particularly, I agree with the majority that "the Board of Representatives lacks the authority to assess the validity of a protest petition after it has been duly referred by the Planning Board."

Also, like the majority, I find support for this conclusion in our case law, most of it concerning the charter. In *Benenson*, we interpreted an almost identical provision of the charter to hold that a protest petition brings a matter before the Board of Representatives because the plain language of the charter "does not provide for the approval or rejection of the 'petition' itself." *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783. As the majority correctly acknowledges, the peti-

be beneficial to the City. Such Plan shall be based on studies of physical, social, economic, and governmental conditions and trends and shall be designed to promote with the greatest efficiency and economy, the coordinated development of the City and the general welfare, health and safety of its people."

Section C6-30-7 of the charter provides in relevant part that, when acting on a proposal to approve or reject an amendment to the master plan, "the Board of Representatives shall be guided by the same standards as are prescribed for the Planning Board in Section C6-30-3 of this Charter. . . ."

Strand/BRC Group, LLC *v.* Board of Representatives

tion is "merely the vehicle" that brings the issue to the Board of Representatives. (Internal quotation marks omitted.) We have reiterated that the "question before the [B]oard [of Representatives is] not the petition, which indicate[s] the property owners' objection to the [master plan amendment], but whether the [master plan amendment] should be approved." *Benenson* v. *Board of Representatives*, supra, 783. Decades before that case, we explained that "[t]he manifest legislative intent expressed in the Stamford charter is that the [B]oard of [R]epresentatives, in considering an amendment to the zoning map, shall review the legislative action of the [city's] zoning board on that board's written findings, recommendations and reasons. The question before the [B]oard of [R]epresentatives is whether to approve or to reject the amendment." *Burke* v. *Board of Representatives*, supra, 148 Conn. 39.

Thus, the majority and I agree that, when a petition is filed with the Planning Board, that board must review it and determine if it warrants referral to the Board of Representatives. Upon referral of the petition by the Planning Board, the Board of Representatives may act only on the merits of the proposed amendment, applying the same legislative standards as the Planning Board. In fact, the Planning Board did refer the petition to the Board of Representatives, albeit with no record of having reviewed and determined whether the petition was timely or contained the number of signatures contemplated by the charter for referral. The Board of Representatives voted on the merits of the amendments and rejected them, which the charter authorized it to do upon referral from the Planning Board.

The majority's reasoning focuses on the Board of Representatives' lack of authority to pass on the petition's validity, not on the Planning Board's failure to pass on the petition's validity and its resulting referral of the petition. The majority repeats several times that

Strand/BRC Group, LLC *v.* Board of Representatives

the Board of Representatives had no authority to determine the petition's validity, including whether it contained sufficient signatures. We know this even if the Planning Board did not. Both the charter's language and our case law make this clear. See Stamford Charter § C6-30-7; see also *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783; *Burke* v. *Board of Representatives*, supra, 148 Conn. 35–36. But this does not necessarily address what happens when the Planning Board erroneously refers a petition to the Board of Representatives. Does the Board of Representatives then lack the authority to pass on the proposed amendment? If the Board of Representatives has no authority to review or pass on the petition's validity, is it for a court to go back and scrutinize whether the referral from one legislative body to another was proper and, if not, to void any subsequent legislative action?

The majority's answers to these questions are "yes" and "yes." The majority claims that the Board of Representatives lacks authority to pass on these amendments because the charter's signature provision "confers a limited authority on the Board of Representatives, which may be exercised only if a sufficient percentage of the owners of private property within a defined geographic area . . . sign and timely file a protest petition with the Planning Board." (Emphasis omitted.) I part company with the majority here because, in my view, it is acting like a court reviewing executive action or a ruling of a lower court rather than a court reviewing legislative action, over which its appropriate scrutiny is much more limited. See, e.g., *Benenson* v. *Board of Representatives*, supra, 223 Conn. 784. And, in voiding the Board of Representatives' subsequent action, the majority appoints itself as a municipal signature counter, which, the majority claims, correctly in my view, the charter delegates to the Planning Board.

The majority is careful not to employ terms such as "jurisdiction" or "aggrievement" in its analysis. These concepts have no obvious place in a court's review of such layers of legislative action. But the majority's use of terms such as "substantive," "condition precedent," "void," and "invalid," is a dead giveaway: the majority cannot disengage from its reflexive judicial role, a role in which, before acting, a body must examine its own jurisdiction and the jurisdiction of the body that came before it. In this world, the majority is constrained to find the exercise of legislative authority by the Board of Representatives on the merits of the amendment tainted by the earlier, improper exercise of authority of the Planning Board, as determined by a court *after* the Board of Representatives has acted. An examination of forums in which these jurisdictional concepts are appropriately applied, and scrutiny of the scant authority the majority cites for its conclusion, exposes the majority's jurisdictional reasoning as faulty.

For example, with the exception of actions challenging an unconstitutional statute or a state officer's actions in excess of statutory authority; *Horton* v. *Meskill*, 172 Conn. 615, 624, 376 A.2d 359 (1977); a court reviews action by state executive officials only pursuant to legislative authorization, which—because it implicates the state's sovereign immunity from suit—is strictly construed. See, e.g., *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 388, 978 A.2d 49 (2009) (statutes in derogation of sovereign immunity should be strictly construed). In a direct action against an executive official, the plaintiff must identify a statute that explicitly or by necessary implication compels a conclusion that the legislature intended to waive the state's sovereign immunity from suit. Id. Similarly, under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., "aggrieved" persons who have "exhausted all administrative remedies available

Strand/BRC Group, LLC *v.* Board of Representatives

within the agency'' may appeal from a ''final decision'' within forty-five days to the Superior Court. General Statutes § 4-183 (a) and (c). Given that § 4-183 constitutes a waiver of sovereign immunity; *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 488 n.20, 55 A.3d 251 (2012); these requirements are considered jurisdictional, and, without strict compliance with each, the Superior Court lacks jurisdiction over the case. See, e.g., *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 812, 629 A.2d 367 (1993) (no jurisdiction for lack of contested case and final decision); *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 502, 508, 264 A.2d 566 (1969) (no jurisdiction for lack of aggrievement); see also *Piteau* v. *Board of Education*, 300 Conn. 667, 690, 15 A.3d 1067 (2011) (no jurisdiction for failure to exhaust administrative remedies). If a trial court rules on the merits of such an action and orders relief against a state agency or official without examining its jurisdiction, and this court or the Appellate Court determines that the trial court lacked jurisdiction, the appellate court will reverse the judgment of the lower court and the relief ordered. See, e.g., *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 571, 821 A.2d 725 (2003) (remanding case with direction to dismiss for lack of jurisdiction because of failure to exhaust administrative remedies); *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 812 (remanding case with direction to dismiss appeal for lack of jurisdiction when there was no contested case and therefore no final decision); *Fletcher* v. *Planning & Zoning Commission*, supra, 508 (remanding case with direction to dismiss appeal for lack of jurisdiction when plaintiff failed to establish aggrievement).

Similarly, with some common-law exceptions, an appellate court may review trial court rulings only by legislative delegation and authority. ''Under General Statutes

Strand/BRC Group, LLC *v.* Board of Representatives

§§ 52-263 and 51-197a, the 'statutory right to appeal is limited to appeals by aggrieved parties from final judgments.' '' *Halladay* v. *Commissioner of Correction*, 340 Conn. 52, 57, 262 A.3d 823 (2021); see also id. (''[b]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim'' (internal quotation marks omitted)); cf. *State* v. *Skipwith*, 326 Conn. 512, 521, 165 A.3d 1211 (2017) (explaining that writ of error is common-law remedy that ''exists independent[ly] of [any] statutory authorization'' (internal quotation marks omitted)). As was the case in the previously discussed example concerning a trial court's review of state executive action, this court will reverse the judgment of the Appellate Court if we determine that the Appellate Court lacked jurisdiction; see, e.g., *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 744, 207 A.3d 493 (2019) (remanding case to Appellate Court to dismiss writ of error for lack of jurisdiction because discovery order was not final judgment); and we will dismiss appeals before our own court if we determine that we do not have jurisdiction. See, e.g., *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 767, 628 A.2d 1303 (1993) (dismissing appeal for lack of jurisdiction because of failure to timely appeal pursuant to General Statutes § 52-278*l*).

These jurisdictional concepts are foreign to the legislative process and to a court's review of that process. ''[C]ourts cannot pass upon the regularity of legislative proceedings, at least in the absence of a violation of some constitutional restriction.'' *State* v. *Sitka*, 11 Conn. App. 342, 346, 527 A.2d 265 (1987), citing *State* v. *Savings Bank of New London*, 79 Conn. 141, 152, 64 A. 5 (1906). We have since the nineteenth century held that ''[c]ourts will interfere with legislative decisions made by municipalities only where the party seeking review

Strand/BRC Group, LLC *v.* Board of Representatives

can characterize the legislative act as illegal, fraudulent, or corrupt. . . . When such bodies are acting within the limits of the powers conferred upon them, and in due form of law, the right of courts to supervise, review or restrain is exceedingly limited.'' (Internal quotation marks omitted.) *Benenson* v. *Board of Representatives*, supra, 223 Conn. 784; *Whitney* v. *New Haven*, 58 Conn. 450, 457, 20 A. 666 (1890). ''Difference in opinion or judgment is never a sufficient ground for interference.'' *Whitney* v. *New Haven*, supra, 457. This includes a difference in opinion about how the petition signatures should or should not be counted. The majority cites this line of cases—which limits judicial review of legislative action and distinguishes legislative action from administrative or quasi-judicial action of municipal actors—as well as our precedents distinguishing mandatory statutory provisions from directory provisions, but does not engage with or follow their reasoning. These cases make this point clearly.

For example, in *LaTorre* v. *Hartford*, 167 Conn. 1, 3–6, 355 A.2d 101 (1974), two city councilmen were financially associated with an insurance company that sought to widen a road to build an office building. Pursuant to Hartford's city charter, the Court of Common Council was authorized to ''lay out, construct, reconstruct, alter . . . streets'' and to ''open and widen streets . . . .'' (Citation omitted; internal quotation marks omitted.) Id., 4. Notwithstanding the trial court's own determination that the councilmen should have been disqualified, this court held that the council's vote to pass the ordinance widening the street was not invalid. See id., 9. The court noted that, when, as in that case, ''the municipal authorities act in accordance with formal requirements, courts will interfere only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize the action

Strand/BRC Group, LLC *v.* Board of Representatives

taken.'' (Internal quotation marks omitted.) Id., 9, quoting *Whitney* v. *New Haven*, supra, 58 Conn. 457. We reasoned that, because ''the [C]ourt of [C]ommon [C]ouncil was acting in a proper legislative capacity in adopting the ordinance to widen [the road]; that the ordinance was enacted for a public purpose; that none of the councilmen acted out of improper motives or permitted any consideration to intrude into the deliberations and actions other than what in [their] sound judgment was in the best interest of the city; and that there was no bad faith, clear abuse of power or plain disregard of duty by the [C]ourt of [C]ommon [C]ouncil in enacting the [road] widening ordinance,'' the trial court erred in vacating the council's enactment based on the councilmen's connection to the company. *LaTorre* v. *Hartford*, supra, 9. We so concluded based on ''due regard for the legislative magistracy and . . . a reluctance to involve the courts in political controversies, and in the review and revision of many, if not all, major controversial decisions of the legislative or executive authorities of a municipality . . . .'' Id., 8.

In contrast, in *Mills* v. *Town Plan & Zoning Commission*, 145 Conn. 237, 140 A.2d 871 (1958), overruled in part on other grounds by *Mott's Realty Corp.* v. *Town Plan & Zoning Commission*, 152 Conn. 535, 209 A.2d 179 (1965), we sustained an appeal challenging a plan and zoning commission's change in both the town's comprehensive plan and a zoning designation. In that case, the commission unanimously denied an application to rezone land from agricultural to a more commercial designation to allow the construction of a shopping center, reasoning that the land was subject to flooding and that there already was adequate land in the area already zoned for business. Id., 239. The applicants reapplied for a change in the comprehensive plan and a zone change several weeks later, and the commission granted the application by a split vote. Id., 239–40. As

Strand/BRC Group, LLC *v.* Board of Representatives

the court explained, "[a]fter the denial of the first application and prior to the filing of the second, the members of the commission and the applicants met privately and agreed upon conditions under which a new application would be considered." Id., 241. The court held that this opened to judicial scrutiny the propriety of the commission's decision to approve the change in the comprehensive plan and the zone change, despite the reluctance of courts to interfere with the actions of legislative bodies, because "a court can grant relief where the local authority has acted illegally or arbitrarily and has clearly abused the discretion vested in it." Id., 242. In the present case, the Board of Representatives' vote on the merits of the amendments cannot reasonably be considered "illegal" conduct that will overcome our high threshold for judicial review of legislative actions, just because the Planning Board failed to validate the petition before referring it. Nor is it the same kind of administrative or quasi-judicial action that warrants judicial scrutiny in accordance with these principles. See, e.g., *Low* v. *Madison*, 135 Conn. 1, 9, 60 A.2d 774 (1948) (invalidating zoning commission's approval of zone change for commission member's wife due to conflict of interest because "administration of power of that nature, whether it be denominated legislative or quasi-judicial, demands the highest public confidence," despite courts' reluctance to inquire into motives of enacting body); see also *LaTorre* v. *Hartford*, supra, 167 Conn. 8 ("[t]his court has consistently applied the standards enunciated in *Low* . . . to zoning boards and commissions, and to public officials acting in administrative or quasi-judicial capacities"). In determining whether the Board of Representatives' action is illegal or arbitrary, the pertinent question is whether the signature provision is mandatory or directory. Unless and until the signature provision is deemed mandatory, which, as I will discuss, is not, any exercise

Strand/BRC Group, LLC *v.* Board of Representatives

of authority by the Board of Representatives without sufficient signatures is not illegal, arbitrary, or without due form of law in the way our case law has articulated.

"In construing a [municipal] charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Internal quotation marks omitted.) *Cook-Littman* v. *Board of Selectmen*, 328 Conn. 758, 768, 184 A.3d 253 (2018). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 19, 848 A.2d 418 (2004); see also *Winslow* v. *Zoning Board*, 143 Conn. 381, 387–88, 122 A.2d 789 (1956) (Board of Representatives was able to amend ordinance despite failure to comply with sixty day requirement in charter).

In particular, we have followed "applicable tenets of statutory construction . . . to ascribe significance to the absence" of legislative consequences in concluding that procedural requirements are directory and not mandatory. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 441, 623 A.2d 1007 (1993). "In *Koepke* v. *Zoning Board of Appeals*, 223 Conn. 171, 177, 610 A.2d 1301 (1992), we determined

Strand/BRC Group, LLC *v.* Board of Representatives

that because the Coventry [Z]oning [B]oard of [A]ppeals had failed to publish adequate notice of a hearing, the hearing and subsequent revocation of the plaintiff's permit were invalid. We then addressed the consequences that flow from a zoning board's invalid hearing and subsequent ruling on an appeal from a decision of a zoning enforcement officer. Id. On that issue we stated: While the board's failure to give proper notice of its public hearing nullified its subsequent actions, that default had no further automatic consequences. *Even if a failure to give proper notice were deemed the equivalent of a failure to take timely action within the time constraints of* [*General Statutes*] *§ 8-7, that statute, contrary to General Statutes §§ 8-3 (g) or 8-26, does not make inaction tantamount to approval either of the challenged zoning permit or of the challenged appeal. . . .* Id., 178–79.'' (Citation omitted; emphasis in original; internal quotation marks omitted.) *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 442–43.

In so concluding, we relied on *Donohue* v. *Zoning Board of Appeals*, 155 Conn. 550, 235 A.2d 643 (1967), in which we held that a statute providing that ''[the zoning] board shall decide such appeal within sixty days after the hearing'' was directory, and not mandatory, and, therefore, the board's decision, rendered after more than sixty days, was not void. (Internal quotation marks omitted.) Id., 554. ''In determining whether a statute is mandatory or merely directory, the most satisfactory and conclusive test is whether the prescribed mode of action is of the essence of the thing to be accomplished or, in other words, whether it relates to matter of substance or matter of convenience.'' Id. We concluded that the provision was directory, and, therefore, the board's decision was not void because (1) the provision related to procedure, (2) the language was affirmative in character and intended to encourage

Strand/BRC Group, LLC *v.* Board of Representatives

timely decisions by the board, (3) the statute contained nothing that "expressly invalidate[d] a belated decision or [that] inferentially [made] compliance therewith a condition precedent," (4) the provision was "not of the essence of the thing to be accomplished," and (5) there was no time limitation, "the nonobservance of which render[ed] the board's decision voidable." Id., 554–55.

Likewise, in the present case, the better reading of § C6-30-7 of the charter, more consistent with our case law, is that it is directory and procedural, not mandatory, substantive, or containing a "condition precedent" to the Board of Representatives' lawful exercise of legislative power. Section C6-30-7 provides in relevant part that, "[i]f twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan, or the owners of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area, file a signed petition with the Planning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment, then said decision shall have no force or effect but the *matter* shall be referred by the Planning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed *amendment* . . . . When acting upon such *matters* the Board of Representatives shall be guided by the same standards as are prescribed for the Planning Board in Section C6-30-3 of this Charter. *The failure of the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Planning Board's decision.*" (Emphasis added.) This provision "is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Lostritto* v. *Community*

*Action Agency of New Haven, Inc.*, supra, 269 Conn.
19. With its time period (ten days) and signature provision (20 percent or more), § C6-30-7 provides for convenience and dispatch. The provision relates to procedure;
it begins the process by which an amendment can be
referred to the Board of Representatives by preventing
the decision from going into "force or effect" and directing the Planning Board to refer the matter with "written
findings, recommendations and reasons." Stamford Charter § C6-30-7. The language is affirmative and intended
to encourage and facilitate timely review by the Board
of Representatives of "matters" about which affected
residents feel strongly because it signals to the Board of
Representatives that there is a matter affecting enough
residents to warrant review. The charter then gives the
Board of Representatives the power to vote down or to
approve the amendment when referred. The signature
provision, therefore, is not one of substance but one
of convenience to ensure the orderly review of amendments by the Board of Representatives.

The best evidence that this provision is directory is
that the charter prescribes no consequence for the Planning Board's referral of a petition that contains an insufficient number of signatures and does not expressly,
or even impliedly, invalidate a decision by the Board
of Representatives for the same insufficiency. See Stamford Charter § C6-30-7. " 'A reliable guide in determining
whether a statutory provision is . . . mandatory is
whether the provision is accompanied by language that
expressly invalidates any action taken after noncompliance with the provision.' . . . By contrast, where a statute by its terms imposes some other specific penalty,
it is reasonable to assume that the legislature contemplated that there would be instances of noncompliance
and did not intend to invalidate such actions. . . .
[The] 'lack of a penalty provision or invalidation of an
action as a consequence for failure to comply with the

Strand/BRC Group, LLC *v.* Board of Representatives

statutory directive is a significant indication that the statute is directory.' '' (Citations omitted.) *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 759–60, 104 A.3d 713 (2014). If the drafters had intended to bar the Board of Representatives from reviewing an amendment on account of an insufficient number of signatures on the petition, it could have included a consequence in the provision, as it did in § C6-30-7. See *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 442 (because other statutory provisions expressly provide for automatic approval, "it can be inferred that had the legislature intended that the failure of a zoning board of appeals to hold a hearing within sixty-five days results in automatic approval, the legislature would have so provided"). Indeed, the very same provision contains a mandated outcome for the Board of Representatives' failure either to approve or reject an amendment within a certain time, namely, it "shall be deemed as approval of the Planning Board's decision." Stamford Charter § C6-30-7. Had the drafters used similar, outcome determinative language in § C6-30-7, the majority's assertion that sufficient signatures are a "condition precedent" to the Board of Representatives' exercise of authority, and that any exercise of authority is "void" without those signatures, might hold some weight.[2]

The majority makes my point for me with its discussion of cases in which we have determined that a time limitation is mandatory, as contrasted with its catalog

[2] For example, the charter contains much clearer language in another provision denying the Board of Representatives authority over highways without Planning Board approval. See Stamford Charter § 214-40 ("[T]he Board of Representatives is empowered, whenever in its opinion public health, safety, welfare, convenience or necessity require[s], to lay out, alter, extend, enlarge, exchange or discontinue any highway or the grade of any highway," but "[s]aid powers granted to the Board of Representatives shall not be exercised without the approval of the Planning Board, the Board of Finance and the Mayor").

Strand/BRC Group, LLC *v.* Board of Representatives

of cases in which we have held such provisions to be directory. In the cases cited in which we have held that a time limitation is mandatory, there has been an accompanying approval clause, attaching a consequence to a legislative body's failure to act on a decision within a certain time period. See, e.g., *Vartuli* v. *Sotire*, 192 Conn. 353, 362, 472 A.2d 336 (1984) (legislature "expressly made approval of a coastal development plan mandatory upon failure to disapprove an application within the specified time period," in part, because of automatic approval clause in accompanying statute), overruled by *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 623 A.2d 1007 (1993); *Viking Construction Co.* v. *Planning Commission*, 181 Conn. 243, 246, 435 A.2d 29 (1980) (requirement to act on subdivision application within time limits was mandatory because "[f]ailure [of] the commission to act within this time frame results in the approval of the subdivision application by operation of law"). Section C6-30-7 is an example of such a provision: the Board of Representatives' failure either to approve or reject the amendment after two regularly scheduled meetings shall be deemed an approval of the Planning Board's decision. In contrast, as I indicated previously, and as in the line of cases the majority cites in which a time limitation is directory, the charter imposes no consequence on the Board of Representatives for taking action on a proposed amendment that arrived pursuant to a petition containing an insufficient number of signatures because the Board of Representatives has no authority or responsibility to scrutinize the petition but has authority to rule on the proposed amendment. See *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 466, 692 A.2d 742 (1997) (requirement to provide notice of assessment within thirty days of hearing was held to be directory, in part because "there is no language expressly invalidating a defective notice"); *Katz* v. *Com-*

Strand/BRC Group, LLC *v.* Board of Representatives

*missioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995) ("[a] reliable guide in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after non-compliance with the provision"); *State* v. *Tedesco*, 175 Conn. 279, 285, 397 A.2d 1352 (1978) (Compliance with a time limitation in an agency's regulations was held to be directory because it is "always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." (Internal quotation marks omitted.)); *Broadriver, Inc.* v. *Stamford*, 158 Conn. 522, 530, 265 A.2d 75 (1969) (ninety day requirement to file return of notice was held to be directory because, in part, "[t]he statute contains nothing to invalidate a belated title transfer or which inferentially makes compliance with the time requirement a condition precedent"), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970); see also *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 597, 181 A.3d 550 (2018) ("[T]he language of Practice Book § 11-21 does not specifically invalidate or otherwise penalize motions filed beyond the thirty day deadline. 'This lack of a penalty provision or invalidation of an action as a consequence for failure to comply with the statutory directive is a significant indication that the statute is directory.' "); *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, supra, 314 Conn. 761–62 (observing that our appellate courts have concluded that "statutory deadlines are directory where there is no express legislative guidance to the contrary and no indication that the legislature intended the deadline to be jurisdictional" by distinguishing cases in

Strand/BRC Group, LLC *v.* Board of Representatives

which statute provided consequence for failure to act within certain time and cases in which statute did not).

Nonetheless, the majority insists that "a *valid* protest petition is a *condition precedent* to the authority of the [B]oard of [R]epresentatives to vote on the merits of an amendment," and only by voiding the Board of Representatives' action on the amendment is the charter given its "intended and obvious meaning . . . ." (Emphasis added.) In an exercise of circular self-definition, the majority opines that the Board of Representatives "acted on a proposed amendment that was not properly before it due to the legal defect in the protest petition" and that the signature threshold is a "condition precedent to the Board of Representatives' authority to vote on the merits of an amendment" that is the " 'essence' " of the provision. The majority contends that the provision was "crafted to achieve a manifestly substantive purpose," which, it asserts without citation, is to limit the Board of Representatives' authority "to situations in which a protest petition is signed by a significant percentage of the persons most affected by the amendment . . . ." (Emphasis omitted.) In particular, the majority cites no cases and provides no legal analysis as to how a court determines that a provision prescribing a legislative process is "substantive" or a "condition precedent . . . ."[3]

---

[3] Usually, a court assesses whether a legislative act is "substantive," as opposed to "procedural," when determining whether the act applies prospectively or retroactively. See, e.g., *D'Eramo* v. *Smith*, 273 Conn. 610, 620–21, 872 A.2d 408 (2005) ("Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Citations omitted; footnote omitted; internal quotation marks omitted.)). Whether a provision constitutes a " 'condition precedent' " implicates the same "mandatory" or "directory" analysis this dissenting opinion undertakes in the text. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 440, quoting *Donohue* v. *Zoning Board of Appeals*, supra, 155 Conn. 554; see also *Leo Fedus & Sons Construction*

Strand/BRC Group, LLC *v.* Board of Representatives

The best the majority can muster for support is *Stamford Ridgeway Associates*, which the majority claims stands for the proposition that the signature provision is a ''substantive provision of the charter intended to ensure that review by the Board of Representatives is triggered if, and only if, there is a sufficient number of owners of private land with interests directly affected by the proposed amendment.'' The case says no such thing, and simply calling that proposition ''[i]nherent'' in the holding of *Stamford Ridgeway Associates* does not strengthen the majority's conclusion. To understand why the majority is mistaken about this precedent requires an understanding of the precise proposal under consideration at the local level in that case.

In *Stamford Ridgeway Associates*, the Zoning Board of the City of Stamford approved a comprehensive zoning plan for the city, consisting of eight separate applications that covered ''large sections of the city of Stamford and included areas for which various zone changes were proposed, as well as other areas that were to remain unchanged.'' *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 409. The plaintiffs, local property owners adversely affected by some of the zone changes proposed in the eighth application, filed protest petitions requesting referral to the Board of Representatives to challenge the zone changes. Id., 409–10. Pursuant to the charter, the Zoning Board referred ''its findings, recommendations and reasons in connection with its action in approving'' the application to the Board of Representatives. Id., 411. The Board of Representatives took no action on the plaintiffs' petitions, which constituted an affirmance of the Zoning Board's decision. Id. The plaintiffs appealed to the Supe-

*Co.* v. *Zoning Board of Appeals*, supra, 440 (''in support of our conclusion . . . the 'statute contains nothing which expressly invalidates a belated decision or which inferentially makes compliance therewith a condition precedent' '').

Strand/BRC Group, LLC *v.* Board of Representatives

rior Court, which, after a trial, sustained the appeal and reversed the action of the Board of Representatives, holding that, under the charter, the Board of Representatives could act only on the entire application as a whole, and not piecemeal, because the Zoning Board had adopted the changes as a " 'single package.' " Id., 419. The trial court further held that its decision was without prejudice to the Board of Representatives' determination whether there was "a sufficient number of petitioners [seeking] a hearing treating the matter as a whole." (Internal quotation marks omitted.) Id., 420.

This court rejected the trial court's conclusion that the Board of Representatives could not act on separate amendments. See id., 422. Looking to the charter, we determined that the language, "[20] percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the [z]oning [m]ap," meant that the 20 percent threshold is measured by the areas to be changed or rezoned, and not the entire application. (Emphasis omitted; internal quotation marks omitted.) Id., 424; see also id., 424–26. To hold otherwise could make it impossible to obtain enough signatures to meet the 20 percent threshold because unaffected property owners, or those happy with the amendment as it pertains to them, might be reluctant to sign the petition, thereby enabling a municipality "to [e]nsure passage of a highly objectionable zoning amendment by simply combining it with another large, unobjectionable amendment. A statute must not be construed in a manner that would permit its purpose to be defeated." (Internal quotation marks omitted.) Id., 426. This court then rejected a broad reading of the phrase "any proposed amendment" to mean all amendments contained in an application because doing so "would limit the right of property owners to petition the [B]oard of [R]epresentatives and *would be in contravention of the legislative intent and purpose of* [*a*

342 Conn. 365        MARCH, 2022        413

Strand/BRC Group, LLC *v.* Board of Representatives

*former provision of the charter*] *§ C-552.2* [*which is essentially the same as § C6-30-7*] *to provide landowners a right to appeal to the board.* It would require a petitioner to obtain signatures of 20 percent of the property owners included in all of the amendments or zone changes encompassed in one application.'' (Emphasis added.) Id., 428. ''A narrow interpretation of 'any' in the phrase 'in any proposed amendment' of § C-552.2 would not only effectuate the ultimate charter purpose giving the right to landowners to protest proposed zone changes but it is the only reasonable and rational construction of § C-552.2.'' Id., 430.

Thus, the discussion in *Stamford Ridgeway Associates* makes clear that the signature provision is not an aggrievement, condition precedent, or limitation provision.[4] Rather, it protects affected nearby landowners[5]

---

[4] Although *Stamford Ridgeway Associates* refers to a landowner's ''right to appeal'' to the Board of Representatives, the charter provision at issue before us, § C6-30-7, does not use this language, and the language it does use is not similar to that used when an aggrieved party has a ''right to appeal'' to a higher tribunal. The charter instead provides that a protest petition leads to a ''referr[al] by the Planning Board to the Board of Representatives,'' with the Planning Board's decision having no force and effect. Stamford Charter § C6-30-7. Where the charter's drafters sought to provide a ''right to appeal'' in the sense we in the judiciary understand it, they did so. See Stamford Charter § C6-30-20.

[5] The flaw in the majority's syllogism is demonstrated by the illogical suggestion that those landowners within the area described by the charter are ''most affected,'' or are the only ones ''directly affected,'' by the passage or defeat of an amendment to the master plan or the zoning regulation. Many such proposals are just as likely to affect directly the interests of innumerable Stamford residents on issues of economics, environment, and population density, to name a few. But *Stamford Ridgeway Associates* concludes that the ability to *petition* the Board of Representatives is not thwarted by the inclusion of additional area, not affected by a proposed amendment, in an application. See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 426. So, although the charter ''very clearly does not provide all Stamford residents with a right to *protest*''; (emphasis added); as the majority states, the charter is similarly very clear that, once an amendment has been referred, erroneously or not, the Board of Representatives' authority to approve or reject an *amendment* is not limited to consideration of only the interests of the residents who protested.

Strand/BRC Group, LLC *v.* Board of Representatives

by empowering them to obtain greater review by the
Board of Representatives, not less, and nothing in our
discussion in that case suggested that the purpose of
the provision was to place a jurisdictional condition
("if, and only if," to use the majority's language) on
the Board of Representatives' authority. See id., 426. It
cannot, therefore, be said that the signature provision is
a matter of substance or that the full legislative scheme
evinces an intent to impose a mandatory requirement.[6]
The more faithful reading of the holding in *Stamford
Ridgeway Associates* is that the purpose of the charter
provision is to facilitate referral to the Board of Repre-
sentatives.

Although I agree that the Board of Representatives
cannot "act in contravention of charter provisions
expressly limiting that authority to specified condi-
tions," the only express limits that the charter provides
for the Board of Representatives is that it act on an
amendment within a certain time period and that it
be guided by typical zoning standards. The signature

---

[6] The majority's reliance on *Stamford Ridgeway Associates* continues
with its suggestion that we have previously held that "sufficient signatures
are needed for [the] Board of Representatives to reconsider" an amendment.
It was not this court that said that, however. Rather, that came from an
opinion by Attorney Robert A. Fuller, whom the president of the Board
of Representatives hired to review the matter. See *Stamford Ridgeway
Associates* v. *Board of Representatives*, supra, 214 Conn. 412–13. And,
although the majority may contend that this court relied on Fuller's opinion
to hold that the Board of Representatives could vote on separate zone
changes contained in one application, nowhere in *Stamford Ridgeway Asso-
ciates* did this court conclude that the Board of Representatives' authority
to vote on amendments is circumscribed by insufficient signatures. Indeed,
the words, "if there are sufficient signatures," do not follow the *Stamford
Ridgeway Associates* quotation, as the majority suggests in footnote 11 of
its opinion. If such a phrase did appear, that would provide the majority
some traction for its assertion that a valid petition is a "condition precedent"
to the exercise of the Board of Representatives' authority. Instead, the words
"sufficient" or "enough" appear only in quotations of Fuller's written advice
or the trial court's memorandum of decision in *Stamford Ridgeway Associ-
ates*, not in this court's analysis or conclusion. See *Stamford Ridgeway
Associates* v. *Board of Representatives*, supra, 414, 417 n.5, 420, 426, 429.

Strand/BRC Group, LLC *v.* Board of Representatives

provision may be an express limit on the Planning Board, but that does not mean that the subsequent exercise of legislative authority by the Board of Representatives is likewise constrained.[7] The majority's attempt to make it so falters on the same grounds as its endeavor to imbue the signature provision as a "substantive" provision or "condition precedent . . . ."

Further, although the majority relies heavily on *Burke* v. *Board of Representatives*, supra, 148 Conn. 33, that case supports my thesis precisely.[8] In that case, the Board of Representatives "failed to follow the charter requirements for the adoption of either an ordinance or a resolution." Id., 41. Although we explained that, when "the charter . . . provides that action of the legislative body shall be by ordinance or resolution, it must act in the manner prescribed"; in that case, the charter did "not require that the [B]oard of [R]epresentatives shall act only by ordinance or resolution. [The charter] empowers the board to adopt and amend its own rules of order. . . . This the board could do in the area where the charter does not specifically provide otherwise. . . . The claim that the action of the [B]oard of [R]epre-

---

[7] The majority's citation to *Woldan* v. *Stamford*, 22 Conn. Supp. 164, 167, 164 A.2d 306 (1960), to support the proposition that a "matter was not properly before the [B]oard of [R]epresentatives" because the petition in that case did not contain enough signatures as required by the charter is unpersuasive, as this court has never so held. As I demonstrated, the purported invalidity of the petition has no bearing on the subsequent exercise of legislative authority by the Board of Representatives.

[8] Also, the majority cites *Burke* to indicate that a referral occurs only " '[i]n th[e] event' " that a petition meets the signature provision. First, *Burke* only restates the charter provisions at issue, and does so incorrectly and without further analysis, as the relevant charter provision does not contain the phrase, "in the event." See generally Stamford Charter § C6-30-7. Second, *Burke* pertained to whether the Board of Representatives had failed to give notice and to provide a hearing, and could relegate review of the amendment at issue to a committee; the suggestion that *Burke* stands for the proposition that a referral occurs only " '[i]n th[e] event' " that the petition contains sufficient signatures is dictum at best. See *Burke* v. *Board of Representatives*, supra, 148 Conn. 35.

Strand/BRC Group, LLC *v.* Board of Representatives

sentatives was invalid because of its failure to follow the rules prescribed by the charter for the adoption of ordinances or resolutions therefore [fails].'' (Citations omitted.) Id., 42–43. We then rejected the claim that the zoning board's work was thwarted if the Board of Representatives could act without notice and a hearing, holding that ''[a]ny claimed defect in the zoning law and procedures adopted for the city of Stamford is a matter for legislative consideration. Courts cannot read into statutes, by the process of interpretation, provisions for notice and a full hearing which are not expressed in them. . . . Courts must apply statutes as they find them, whether or not they think that the statutes might be improved by the inclusion of other or additional provisions.'' (Citations omitted.) Id., 43. Likewise, the majority may not read into the charter a limitation on the Board of Representatives' exercise of authority that is not present.

Trained as lawyers and operating as we do in a judicial forum, it is understandably difficult for judicial officers to keep our hands off the legislative process and to try not to make regular that which is irregular. As a court, we are drawn to consider a signature provision like the one in the present case to be akin to an ''aggrievement'' requirement. That is familiar to us. Without explicitly saying so, that is how the majority treats it. But measured against our cases, and particularly as applied to the legislative arena, it is not.

For example, if the protest petition had been filed one day late and the Planning Board still referred it to the Board of Representatives, there is no doubt that, under our previously discussed cases, we would conclude that the timeliness provision is not a condition precedent or a mandatory requirement. The Planning Board's referral would not be void; nor would the Board

Strand/BRC Group, LLC *v.* Board of Representatives

of Representatives' action upon referral.[9] Similarly, there is no evidence that the drafters of the charter intended the signature provision, found only words away from the ten day provision, to be a strict jurisdictional or aggrievement requirement, let alone a condition precedent, and we should resist the temptation to impose judicial order on a process that is not orderly. Not all legislative errors warrant judicial intervention and management. "Absent a clear showing of fraud, illegality, or corruption, courts will not intervene in the legislative process." *Northeast Electronics Corp.* v. *Royal Associates*, 184 Conn. 589, 593, 440 A.2d 239 (1981). The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. *Tillman* v. *Planning & Zoning Commission*, 341 Conn. 117, 128, 266 A.3d 792 (2021). Any dissatisfaction with the Board of Representatives' exercise of authority in rejecting the amendment is remedied by engaging in the political process. See, e.g., *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 185, 479 A.2d 1191 (1984); *Northeast Electronics Corp.* v. *Royal Associates*, supra, 593.

The judiciary, unlike the elected representatives of Stamford, is uniquely unequipped to delve into the local legislative arena. In fact, we very recently stated that, "[i]n traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in its legislative or administrative capacity. . . . Zoning must be sufficiently flexible to meet the demands

[9] The same would be true if the Planning Board had *rejected* the plaintiffs' application, the plaintiffs petitioned for referral to the Board of Representatives pursuant to § C6-30-8, the Planning Board erroneously referred the petition before validating the signatures, and the Board of Representatives approved the plaintiffs' proposed amendment. In my view, the Board of Representatives' action could not be undone by a court because of a supposed erroneous referral.

Strand/BRC Group, LLC *v.* Board of Representatives

of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission.'' (Internal quotation marks omitted.) *Tillman* v. *Planning & Zoning Commission*, supra, 341 Conn. 127–28. Courts afford ''zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. . . . Courts, therefore, must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally.'' (Citation omitted; internal quotation marks omitted.) *First Hartford Realty Corp.* v. *Plan & Zoning Commission*, 165 Conn. 533, 540–41, 338 A.2d 490 (1973). Inasmuch as the Board of Representatives, under the charter, undertakes the same legislative function and applies the same standards as a zoning board or a planning board, we should afford the same deference in this matter.

Because of the majority's determination to supervise the regularity of local legislative processes, I am concerned that this court will necessarily inject itself into local legislative disputes in innumerable municipalities. In the present case, for example, what is at stake is whether there should be an amendment to the master plan for the city of Stamford. This is a classic political matter for the city and its duly elected local representatives to consider. Although the framers might have determined, for reasons of convenience or dispatch, to put the onus to protest an amendment on those who own land nearby through the signature provision, as I have established, this provision cannot be understood as a jurisdictional barrier. After all, amending the master

Strand/BRC Group, LLC *v.* Board of Representatives

plan impacts all aspects of city governance and city life: traffic, tax base, schools, residential and commercial development, changes in population density, and environmental concerns.

Of course, the court's reservations—and my own— about wading into local legislative matters would be completely misplaced if vested rights were at stake in this dispute. But they are not. No one argues that they are. "To be vested, a right must have become [for example] a title, legal or equitable, to the present or future enjoyment of property, or to the present or future . . . enforcement of a demand, or a legal exemption from a demand made by another. . . . A right is not vested unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of the existing general laws." (Citation omitted; internal quotation marks omitted.) *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, 98 Conn. App. 213, 233, 907 A.2d 1235 (2006), cert. denied, 281 Conn. 903, 916 A.2d 44 (2007); see also *Aspetuck Valley Country Club, Inc.* v. *Weston*, 292 Conn. 817, 834, 975 A.2d 1241 (2009). For example, we have rejected a claim that a validating act was unconstitutional because the plaintiffs had no vested right to sue on the basis of procedural defects in the state environmental protection commissioner's preparation of an environmental impact statement. See *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 71–72, 441 A.2d 68 (1981), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 800 A.2d 1102 (2002). We explained that the plaintiffs did not "allege that the commissioner lacked authority, but rather that he attempted to exercise his authority in an unauthorized fashion. 'The law is well established in this state that invalidity which comes about in this manner may be cured retrospectively by appropriate

legislation.' '' *Manchester Environmental Coalition* v. *Stockton*, supra, 71–72.

In the zoning context, "[a] landowner does not have a vested right in the existing classification of his land. On the contrary, the enabling acts which authorize the enactment of zoning ordinances provide for the amendment of such ordinances. A landowner's right to establish a particular use can be summarily terminated by an amendment which reclassifies his land and outlaws the use in question. . . . A landowner does not obtain a vested right in what has subsequently become a nonconforming use by filing a plan or by applying for a construction permit. . . . Even the issuance of a building permit does not necessarily create a vested right unless the building is substantially under construction before zoning regulations are amended." (Citations omitted; internal quotation marks omitted.) *Marmah, Inc.* v. *Greenwich*, 176 Conn. 116, 120–21, 405 A.2d 63 (1978). The Appellate Court has held that, although a plaintiff may have vested rights in a property, generally, a plaintiff does not have "vested rights in the configuration of that property as it sought to reconfigure it, nor could it have acquired such vested rights without seeking approval of its proposed reconfiguration in accordance with established protocol and procedures." *Stones Trail, LLC* v. *Weston*, 174 Conn. App. 715, 742, 166 A.3d 832, cert. dismissed, 327 Conn. 926, 171 A.3d 59 (2017), and cert. denied, 327 Conn. 926, 171 A.3d 60 (2017).

Further, "[n]o one has a vested right in any given mode of procedure . . . and so long as a substantial and efficient remedy remains or is provided due process of law is not denied by a legislative change." (Citations omitted.) *Crane* v. *Hahlo*, 258 U.S. 142, 147, 42 S. Ct. 214, 66 L. Ed. 514 (1922); see also *Vernon* v. *Cassadaga Valley Central School District*, 49 F.3d 886, 890 (2d Cir. 1995). The failure of the petition to contain sufficient signatures does not therefore vest in the plaintiffs any

Strand/BRC Group, LLC *v.* Board of Representatives

rights in the successful passage of their amendment. It cannot be said that the plaintiffs have no remedy available to them if they cannot void the Board of Representatives' vote due to an insufficient number of signatures. There are at least two potential avenues, one of which the plaintiffs pursued: (1) challenging the Board of Representatives' vote on the merits as not applying the appropriate legislative standard provided by the charter, or (2) engaging in the legislative process, such as reapplying for an amendment, gathering additional political support, or asking the Board of Representatives to reconsider. I am unaware of anything that prevented the plaintiffs from pursuing this latter remedy in the years since this litigation began or anything preventing them from pursuing it now. I submit that that is a far superior remedy than a court undoing the action of the city's representative body.

I recognize that the majority is *not* taking the action it is today based on a theory of vested rights. It is doing so based on far less justification. To the majority, because the five person Planning Board adopted the plaintiffs' amendment and, based on our count and no one else's, the petition contained an insufficient number of signatures, the Board of Representatives had no business taking action on that amendment. And the majority is here to correct that. I simply disagree that that is—or should be—a court's role, and I believe our precedents agree.

My disagreement is further supported by the fact that the United States Court of Appeals for the Second Circuit has rejected a remarkably similar challenge to a town planning board's enactment of zoning ordinances. In *Orange Lake Associates, Inc.* v. *Kirkpatrick*, 21 F.3d 1214, 1224 (2d Cir. 1994), the Second Circuit held that a developer's due process rights were not violated when the town board of Newburgh, New York, enacted zoning ordinances to implement a new master

Strand/BRC Group, LLC *v.* Board of Representatives

plan for Newburgh. The Second Circuit agreed that the developer had ''no vested right to approval of its plans for the project'' and that there was nothing to indicate that the developer's claimed procedural defects affected the decisions of the town board or Newburgh's planning board. Id. Likewise, here, the plaintiffs have no vested right in the approval of their proposed amendment, as nothing currently before this court suggests that the insufficient signatures affected the Board of Representatives' decisions on the merits of the amendment, given that the trial court bifurcated the trial to address the jurisdictional issue first. If the law were otherwise, the judiciary would be invited regularly to intervene in routine legislative proceedings, in contravention of our settled role. Vested rights provide a clear delineation so that courts do not get involved in the kind of policymaking that is better left to more representative bodies elected to conduct the work of local lawmaking.

Because I would conclude that any erroneous referral of the petition by the Planning Board does not vitiate the action of the Board of Representatives, I would reverse the trial court's judgment and remand the case to that court for additional proceedings on whether the Board of Representatives acted arbitrarily, illegally, or in a manner that was inconsistent with the guiding zoning standards when voting on the merits of the proposed amendment. I therefore respectfully dissent.